July 27, 2012

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/27/2012

PRO SE OFFICE
(CJ)

United States District Court for the
Southern District of New York

Civil Action No: 12 CV 5179

Renata Colon

Plaintiff

Arthur Colon          Defendant

1. I am the defendant, Arthur Colon and I am pro-se in these proceedings.
2. I am submitting this response to the Summons in a Civil Action served upon me by the plaintiff, Renata Colon.

RESPONSE

1. The Statement of Claim in this Summons has already been tried in the Divorce Trial, Colon vs. Colon, Index No. 18006-08 which took place in the Supreme Court of the State of New York, County of Westchester on May 18-23rd 2011.
2. In the Judgment of Divorce dated July 6, 2012, the defendant's claim was denied. Exhibit A: Judgment of Divorce, Index no: 18006-08, pages 21 lines 7-18.

COURT: The defendant (Renata Colon) is seeking $8,125.00 from Plaintiff (Arthur Colon) for his withdrawal of funds from the Ameritrade account. That withdrawal occurred precommencement. It was 2007. There is no indication that it was on the eve of trial or in contemplation of the parties divorce. Plaintiff testified and presented evidence that those monies that he received from that trade was used to pay down credit card debt, including defendant's (Renata Colon) credit card debt. That application IS DENIED.

The plaintiff should not be permitted to bring this complaint since it has already been ordered and decreed in the Supreme Court of the United State of New York, County of Westchester. Plaintiff's application has already been investigated and denied by this court.

Wherefore, it is respectfully requested that this United States District Court deny the plaintiff's claim.

Arthur Colon
4 Rose Hill Drive
Armonk, New York 10504
914-494-9518

Sarah DiMaula
Notary Public, State of New York
No. 01DI6144711
Qualified in Westchester County
Commission Expires May 01, 2014

07/27/2012

July 27th, 2012


United States District Court


Renata Colon                                          Civil Action no: 12 CV 5179

      Plaintiff


Arthur Colon                                          Affirmation of Service

      Defendant


Please be informed that on July 27th, 2012, a response to the above Civil Summons was left off at the Plaintiff's address of 6 Weyburn Road, Scarsdale, New York 10583 and a copy was also sent via certified mail to the same address .

Arthur Colon
4 Rose Hill Drive
Armonk, New York 10504
914-494-9518

RECEIVED

~~CLERK~~
~~SUPREME~~
~~COURTS~~

At I.A.S. Matrimonial Part of the
Supreme Court of the State of New
York, held in and for the County of
Westchester, White Plains, New York
on the **6** day of _July_
2012.

PRESENT: Hon. Linda Christopher

         J.S.C.

------------------------------------X

ARTHUR COLON

       Plaintiff,

  -against-

RENATA COLON,

       Defendant.

------------------------------------X

*Exhibit A*

Index No. 18006/08

Judgment of Divorce

    **EACH PARTY HAS A RIGHT TO SEEK A MODIFICATION OF THE CHILD SUPPORT ORDER UPON A SHOWING OF: (I) A SUBSTANTIAL CHANGE IN CIRCUMSTANCES; OR (II) THAT THREE YEARS HAVE PASSED SINCE THE ORDER WAS ENTERED, LAST MODIFIED OR ADJUSTED; OR (III) THERE HAS BEEN A CHANGE IN EITHER PARTY'S GROSS INCOME BY FIFTEEN PERCENT OR MORE SINCE THE ORDER WAS ENTERED, LAST MODIFIED, OR ADJUSTED; HOWEVER, IF THE PARTIES HAVE SPECIFICALLY OPTED OUT OF SUBPARAGRAPH (II) OR (III) OF THIS PARAGRAPH IN A VALIDLY EXECUTED AGREEMENT OR STIPULATION, THEN THAT BASIS TO SEEK MODIFICATION DOES NOT APPLY.**

    **NOTICE REQUIRED WHERE PAYMENTS THROUGH SUPPORT COLLECTION UNIT**

**NOTE: (1) THIS ORDER OF CHILD SUPPORT SHALL BE ADJUSTED BY THE APPLICATION OF A COST OF LIVING ADJUSTMENT AT THE DIRECTION OF THE SUPPORT COLLECTION UNIT NO EARLIER THAN TWENTY-FOUR MONTHS AFTER THIS ORDER IS ISSUED, LAST MODIFIED OR LAST ADJUSTED, UPON THE REQUEST OF ANY PARTY TO THE ORDER OR PURSUANT TO PARAGRAPH (2) BELOW. UPON APPLICATION OF A COST OF LIVING ADJUSTMENT AT THE DIRECTION OF THE SUPPORT COLLECTION UNIT, AN**

ADJUSTED ORDER SHALL BE SENT TO THE PARTIES WHO, IF THEY OBJECT TO THE COST OF LIVING ADJUSTMENT, SHALL HAVE THIRTY-FIVE (35) DAYS FROM THE DATE OF MAILING TO SUBMIT A WRITTEN OBJECTION TO THE COURT INDICATED ON SUCH ADJUSTED ORDER. UPON RECEIPT OF SUCH WRITTEN OBJECTION, THE COURT SHALL SCHEDULE A HEARING AT WHICH THE PARTIES MAY BE PRESENT TO OFFER EVIDENCE WHICH THE COURT WILL CONSIDER IN ADJUSTING THE CHILD SUPPORT ORDER IN ACCORDANCE WITH THE CHILD SUPPORT STANDARDS ACT.

(2) A RECIPIENT OF FAMILY ASSISTANCE SHALL HAVE THE CHILD SUPPORT ORDER REVIEWED AND ADJUSTED AT THE DIRECTION OF THE SUPPORT COLLECTION UNIT NO EARLIER THAN TWENTY-FOUR MONTHS AFTER SUCH ORDER IS ISSUED, LAST MODIFIED OR LAST ADJUSTED WITHOUT FURTHER APPLICATION BY ANY PARTY. ALL PARTIES WILL RECEIVE A COPY OF THE ADJUSTED ORDER.

(3) WHERE ANY PARTY FAILS TO PROVIDE, AND UPDATE UPON ANY CHANGE, THE SUPPORT COLLECTION UNIT WITH A CURRENT ADDRESS, AS REQUIRED BY SECTION TWO HUNDRED FORTY-B OF THE DOMESTIC RELATIONS LAW, TO WHICH AN ADJUSTED ORDER CAN BE SENT, THE SUPPORT OBLIGATION AMOUNT CONTAINED THEREIN SHALL BECOME DUE AND OWING ON THE DATE THE FIRST PAYMENT IS DUE UNDER THE TERMS OF THE ORDER OF SUPPORT WHICH WAS REVIEWED AND ADJUSTED OCCURRING ON OR AFTER THE EFFECTIVE DATE OF THE ADJUSTED ORDER, REGARDLESS OF WHETHER OR NOT THE PARTY HAS RECEIVED A COPY OF THE ADJUSTED ORDER.

Plaintiff, having commenced this action for a Judgment of absolute divorce by service on defendant personally in this State of the Summons with Notice bearing the notation "Action for a Divorce" (by reason of the cruel and inhuman treatment of plaintiff by defendant); and defendant having appeared pro se; and plaintiff having appeared by Guttridge & Cambareri, P.C.; and the parties having appeared before this Court on May 16, 17, 19, 23, and 24, 2011 for trial; an inquest on the divorce having been held; and the parties having stipulated to the resolution of

2

certain issues on May 23, 2011; the May 23, 2011 ~~Minutes are~~ *Transcript is*

annexed as **Exhibit A**; and the Court having issued a decision on

the record (the "December 21, 2011 Decision"); the December 21,

2011 ~~Minutes are~~ *transcript is* annexed hereto as **Exhibit B**; and the plaintiff's

address being 4 Rosehill Drive, Armonk, New York 10504 (the

"Armonk Residence")(social security number 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); and

defendant's address being 6 Weyburn Road, Scarsdale, New York

10583(social security number 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); and such proof having

been considered by me, I decide and find as stated in the

separate FINDINGS OF FACT AND CONCLUSIONS OF LAW of even date

herewith:

ORDERED, ADJUDGED AND DECREED, that, pursuant to the

Inquest and pages 5 and 39 of the December 21, 2011 Decision

(**Exhibit A**), the marriage between Arthur Colon, plaintiff, and

Renata Colon, defendant, is dissolved on the evidence found in

the Findings of Fact and Conclusions of Law in accordance with *by reason of the constructive abandonment of plaintiff by defendant for a period of one or more years*

Domestic Relations Law, Section 170(2); and it is further

ORDERED, ADJUDGED AND DECREED that, pursuant to the October

26, 2011 stipulation of the parties and pages 5-6 of the December

21, 2011 Decision, the parties shall have joint legal custody of

the Children, Vincent Colon, born April 9, 1990, Valerie Colon,

born April 28, 1991 and Victoria Colon, born June 3, 1994 with

primary physical custody of the Children to the plaintiff; and it

is further

3



_Pursuant to the parties' stipulation placed on the record May 23, 2011, plaintiff shall be entitled_

ORDERED, ADJUDGED AND DECREED that, pursuant to pages 6-7 of

_per the stipulation placed on the record May 23, 2011,_ ~~the December 21, 2011 Decision~~, the plaintiff is entitled to

buyout the defendant's interest in the Armonk Residence on or

about December 31, 2011 by having the defendant's name removed

from the home equity line of credit and from the mortgage.

~~Plaintiff shall have exclusive occupancy of the Armonk Residence~~

~~until defendant's purchasers his interest or the property is sold~~

~~to a third party.~~ The plaintiff shall pay the defendant her

interest in the Armonk Residence as determined either by

agreement of the parties or, if they are unable to agree, then

Lane Appraisals shall prepare a neutral appraisal~~, (Attached as~~

~~Exhibit "C").~~ The cost of which shall be shared equally by the

parties. If the plaintiff determines that he does not wish to

exercise his option to purchase defendant's interest in the

Armonk Residence, then the defendant may decided to purchase the

plaintiff's interest in the Armonk Residence. She will then

advise him on or before the youngest child's eighteenth birthday,

June 3, 2012. She shall have until August 31, 2012 to purchase

_by removing the plaintiff's name from the mortgage and home equity line_

the plaintiff's interest in the Armonk Residence. ~~[The value of a~~

_of credit so that he has no responsibility for those loans, and pay him his interest in the residence_

~~parties'~~ interest in the Armonk Residence ~~shall be one-half of~~

_based upon an appraisal to be conducted by Lane Appraisals, or as agreed upon by the parties. In_

~~net of the value (either agreed or appraised) and the liens~~

_the event defendant purchases plaintiff's interest in the marital residence plaintiff may remain in_

~~(mortgages, HELOC) against the property; and it is further~~

_the marital residence until August 31, 2012;_ ~~and it is further~~

~~ORDERED, ADJUDGED AND DECREED that, if neither party~~

~~purchasers the other parties' interest in the Armonk Residence,~~

~~then the parties shall mutually select a qualified broker for the~~

_* remain in the marital residence until the youngest child turns 18, at which time the house_
_will be placed on the market. However,_

4

~~sale of the type of property associated with the Armonk~~

Residence.  The parties will jointly establish a sale price for

such property. If they are unable to do so, then Lane Appraisal

shall provide a valuation for the sale price.  The parties shall

mutually agree upon a reasonable purchase offer; provided,

however, that the purchase offer is reasonably based on

prevailing market rates.  The parties shall each in good faith

proceed with the sale of the Armonk Residence, including but not

limited showing the Armonk Residence and executing a contract of

sale with a purchaser, comply with the terms of any contract of

sale for the sale of the Armonk Residence, including but not

limited to timely vacating the Armonk Residence and attending any

closings. Upon the sale of the Armonk Residence, the parties

shall each receive fifty percent (50%) of the Net Proceeds, as

defined herein, of the sale.  "Net Proceeds" as used herein shall

mean the gross receipts derived from the sale, less the "Expenses

of Sale." "Expenses of sale" shall mean the cost of satisfying

any joint encumbrances or liens; all transfer taxes and title

company fees chargeable to the seller; any brokers' commissions;

all maintenance and repair expenses agreed to by both parties in

order to place the premises in a saleable condition, the

attorney's fee for one attorney to represent the parties in

connection with the sale of the Armonk Residence and other usual

and customary expenses incidental to the sale of the Armonk

~~Residence and closing of title, including but not limited to~~

~~transfer taxes, filing fees and placing~~ the property in broom
clean condition.  The parties shall equally share the cost of all
agreed upon maintenance and repairs, including preparing the
Armonk Residence for sale.  "Expenses of sale" shall not include
the costs of satisfying any judgment against either party, which
may be a lien on the premises, which shall be paid by that party
out of his or her share of the net proceeds of sale;]and it is
further

    ORDERED, ADJUDGED AND DECREED, that pursuant to page 7 of the
December 21, 2011 Decision, the defendant shall pay the plaintiff
$8,500 _for his interest in the Mayan timeshare_ by sending a check to plaintiff's counsel, John Guttridge,
Esq. to be held in escrow pending receipt of the transfer
documents for plaintiff's interest in the Mayan ~~and two other~~
timeshare.  The plaintiff shall execute whatever documents are
necessary to transfer his interest in said timeshare$ as prepared
by defendant and presented to plaintiff; and it is further

_ORDERED, Adjudged and Decreed that pursuant to page 8 of the May 23, 2011 Stipulation_ ✱

    ORDERED, ADJUDGED AND DECREED, that pursuant pages 7-8 of
the December 21, 2011 Decision, each party shall retain their own
vehicle; and it is further

    ORDERED, ADJUDGED AND DECREED that, pursuant to page 8 of
the December 21, 2011 Decision, the plaintiff shall be entitled
to all _of_ the personal property in and at the Armonk Residence; and
it is further

    ORDERED, ADJUDGED AND DECREED that, pursuant to page 8 of
the December 21, 2011 Decision, the defendant owes the plaintiff

✱ _the defendant shall have right title and interest in the two other timeshares and the plaintiff shall execute whatever documents are necessary to effect transfer of title of same to the defendant; and it is further_

$6,300 as and for child support arrears through May 2011; and it is further

ORDERED, ADJUDGED AND DECREED, that pursuant to page 72 of the December 21, 2011 Decision, the defendant owes the plaintiff $5,532 in Medical Insurance premium arrears owed up to the date of trial; and it is further

ORDERED, ADJUDGED AND DECREED, that pursuant to page 73 of the December 21, 2011 Decision, the defendant owes the plaintiff $3,172 in unreimbursed Medical cost arrears up to the date of trial; and it is further

ORDERED, ADJUDGED AND DECREED that, pursuant to page 8 of the December 21, 2011 Decision, the defendant removed $120,000 from the parties' home equity line of credit and used it for payment of the parties' children's college education.  The parties have agreed that this is not an issue; and it is further;

ORDERED, ADJUDGED AND DECREED, that, pursuant pages 8 and 20 of the December 21, 2011 Decision, the ~~party~~ parties shall each be responsible for loans taken out against their respective 401-K and other retirement funds; and it is further

ORDERED, ADJUDGED AND DECREED, that, pursuant to pages 8, 20 and 46-47 of the December 21, 2011 Decision, the parties' retirement funds shall be divided in accordance with the Majewskas formula (the parties are to equally divided the marital component of the retirement funds (funds from the date of marriage through the date of commencement, as well as any

7

additions or subtractions from those funds due to market forces

*any monies withdrawn by either party shall be accounted for when the parties prepare the domestic relations order*
*only).* The parties shall retain Robert Guarnera to prepare the

QDROs necessary to divide the retirement accounts and *shall* equally

share the cost of preparing the QDROs; and it is further

ORDERED, ADJUDGED AND DECREED, that, pursuant to pages 8-9

of the December 21, 2011 Decision, the parties shall equally

share the cost of health insurance for the children and out-of-

pocket expenses for the children, provided that they use in-

network providers, unless they agree otherwise in writing; and it

is further

~~ORDERED, ADJUDGED AND DECREED, that, pursuant to page 9 of~~

~~the December 21, 2011 Decision, the parties shall equally share~~

~~the cost of~~ *This pertains to* past and future add-ons up to the parties' children's

age of 21; and it is further

ORDERED, ADJUDGED AND DECREED, that pursuant to page 9-11

of the December 21, 2011 Decision, each party shall pay one-half

of the cost of a SUNY educational expense at Binghamton,

including the cost of application fees, SAT, ACT fees, expenses

required by the child's course of study, including books,

supplies, required computers, and activity fees until the age of

21; and it is further

ORDERED, ADJUDGED AND DECREED, that pursuant to pages 9-10

of the December 21, 2011 Decision, the defendant shall receive a

credit for her share of room and board paid by her not from the

529 account which payment shall be a credit against child support

*from each retirement account meaning that if one party took funds out of that account*
*they shall be responsible to the other party for one-half of those funds.*

for the child in college (that portion of child support obligation attributable to the child who is in college - i.e. if the child support is $8,000 for three children, and the room and board is $8,000 for one child, defendant cannot take an $8,000 credit because that would leave the other two children with no child support) (citing Levy v. Levy, 52 A.D.3d 717 (2nd Dept. 2008) and Rohrs v. Rohrs, 297 A.D.2d 317 (2nd Dept. 2002); and it is further

ORDERED, ADJUDGED AND DECREED that, pursuant to page 11 of the December 21, 2011 Decision, the defendant shall pay $500.00 towards the balance of Valerie's school due at the time of trial; and it is further

ORDERED, ADJUDGED AND DECREED that, pursuant to page 11 of the December 21, 2011 Decision, regarding carry forward losses, the defendant shall take the maximum deduction, not to exceed $3,000 for four years going forward.  The parties shall equally split the balance of the deductions allowable up to $60,000, less the amount that defendant takes for 2011; and it is further

ORDERED, ADJUDGED AND DECREED that, pursuant to pages 18-19 of the December 21, 2011 Decision, the plaintiff is entitled to $46,970.50 representing one-half of the $93,835 withdrawn by defendant from the parties' joint account and placed in a joint account with her sister; and it is further

ORDERED, ADJUDGED AND DECREED that, pursuant to page 19 of the December 21, 2011 Decision, the plaintiff is entitled to

9

$10,500 representing one-half of the $21,000 withdrawn by the defendant from the home equity line of credit and placed into an account in Victoria Colon's name; and it is further

ORDERED, ADJUDGED AND DECREED that, pursuant to pages 19-20 of the December 21, 2011 Decision, the plaintiff is entitled to $26,503 representing one-half of the $53,000 reduction of the mortgage from the time of commencement to the time of trial; and it is further

ORDERED, ADJUDGED AND DECREED that, pursuant to pages 20-21 of the December 21, 2011 Decision, the plaintiff shall pay the defendant $928.24 representing the maintenance paid by the defendant for the timeshares in 2009 and 2010; and it is further

ORDERED, ADJUDGED AND DECREED that, pursuant to page 21 of the December 21, 2011 Decision, the defendant application for is not entitled to $8,125 for funds withdrawn by the plaintiff in 2007 from the Ameritrade account is denied; and it is further

ORDERED, ADJUDGED AND DECREED that, pursuant to pages 21-22 of the December 21, 2011 Decision, the plaintiff shall pay to defendant $6,000 representing one-half of the net proceeds after payment of taxes ( (total sale $21,734 by net taxes) $12,000) from the sale of the IBM stock options; and it is further

ORDERED, ADJUDGED AND DECREED that, pursuant to page 22 of the December 21, 2011 Decision, the defendant application for is not entitled to $3,814 for monies received by plaintiff from the sale of stock on March 16, 2007 is denied; and it is further

10

ORDERED, ADJUDGED AND DECREED that, pursuant to page 22 of the December 21, 2011 Decision, defendant *application for* is not entitled to one-half of the $23,690 paid to plaintiff by a tenant in the house *is denied*; and it is further

ORDERED, ADJUDGED AND DECREED that, pursuant to page 22-23 of the December 21, 2011 Decision, the plaintiff shall pay defendant $417.00 representing half of the out-of-pocket expenses ($834) for add-ons paid by defendant for the children; and it is further

ORDERED, ADJUDGED AND DECREED that, pursuant to page 23 of the December 21, 2011 Decision, defendant *application for monies alleged is due to her as a result of* is not entitled to one-half of the $12,900 she alleges *plaintiff* he withdrew from the HELOC *is denied* between August 15, 2008 and January 13, 2011; and it is further

ORDERED, ADJUDGED AND DECREED that, pursuant to pages 23-24 of the December 21, 2011 Decision, the total of the monies due from plaintiff to defendant and defendant to plaintiff, as set forth above in this judgment, results in defendant owing plaintiff the net sum of $76,521 which shall be paid within a period of three months *in accordance with the transcript dated* from December 21, 2011 or plaintiff may apply for a money judgment; and it is further

ORDERED, ADJUDGED AND DECREED that, pursuant to pages 26-37, and 52-53 of the December 21, 2011 Decision, the defendant *Vicanic Colon (2/10/16 6/12/19)* *for the two unemancipated children of the marriage, Valerie Colon (2/10/16 4/28/19) and* shall pay to the plaintiff, as and for Basic Child Support, the amount of $3,042 per month on the first day of each month, commencing May 1, 2011.    Upon the emancipation of Valerie Colon

11

at the age of 21, the basic child support will then be reduced to $2,060 per month.  These payments shall be made through the Support Collection Unit, but until same is in place, payments are to be made directly to the plaintiff; and it is further

ORDERED, ADJUDGED AND DECREED that, pursuant to page 37 of the December 21, 2011 Decision, each party shall be entitled to declare one of the parties' children as a dependent on his or her income tax return (in accordance with Popelaski v. Polelaski, 22 A.D.3d 735 (2nd Dept. 2005) beginning in 2012.  The plaintiff shall be entitled to both children as dependents in 2011; and it is further

ORDERED, ADJUDGED AND DECREED, that, pursuant to pages 37-38 and 40 of the December 21, 2011 Decision, the defendant shall maintain $300,000 in life insurance with the children ~~as~~ named beneficiaries which can be reduced by the amount paid in child support (it may be a declining term policy) during the period of support for each year, however, the coverage shall not be less than the amount owed by the defendant (citing Moran v. Grillo, 44 A.D.3d 859 (2nd Dept. 2007).

Defendant's obligation to maintain life insurance shall continued until each child has reached the age of 21. ~~Defendant shall~~ The plaintiff may upon written request by certified mail return receipt requested, request of the defendant, and the defendant shall comply and provide proof ~~provide proof of such coverage to the plaintiff by December 31st~~ of the existence of paid policy yearly in or by are December 31st of each year that it is requested ~~of each year, by certified mail;~~ and it is further

ORDERED, ADJUDGED AND DECREED, that, pursuant to pages 55-57 of the December 21, 2011 Decision, defendant's application for an award of counsel fees is denied and the plaintiff has

12

withdrawn his application for counsel fees; and it is further

ORDERED, ADJUDGED AND DECREED, that, pursuant to page 39 of

the December 21, 2011 Decision, the Court has considered the

additional contentions of the parties not specifically addressed

in the December 21, 2011 Decision and finds them to be without

merit; and it is further

ORDERED, Adjudged and Decreed that defendant shall be served with a copy of this judgment, with notice of entry, by plaintiff, within 20 days of such entry; and it is further

ORDERED, ADJUDGED AND DECREED that defendant may resume the

use of a pre-marriage name as follows: MAZZULLIS ; and it is further

ORDERED, Adjudged and Decreed that pursuant to pages 26-27 of the December 2011 Decision, for child support purposes the court finds defendant has the capacity to earn $154,289 yearly which were her 2006 earnings. With regard to plaintiff's income for child support purposes, the court used plaintiff's 2010 earnings of $171,445 *

So Ordered:

July 6, 2012                    _____
                                J.S.C.
                                Hon. Linda Christopher

* less $26,734 which was income from the exercise of stock options. Therefore, the plaintiff's income for child support purposes is $144,711. Pursuant to pages 25-27 of the December 21, 2011 Decision, the adjusted gross income of the defendant plaintiff who is the custodial parent is $140,918 ($144,711 less $6622 FICA and $2171 medicare) per year and the adjusted gross income of the defendant who is the non custodial parent is $145,430 ($154,289 imputed income less $6622 FICA and $2237 medicare) per year and the combined parental annual income is $286,348 per year. The applicable child support percentage is 25%. The combined basic child support obligation attributable to both parents is $32,500 per year on income up to $130,000 and $39,087 per year on income over $130,000. The plaintiff's pro rata share of the combined parental income is 49% and the defendant's pro rata share of the combined parental income is 51%. The noncustodial parent's pro rata share of the child support obligation on combined income to $130,000 is $16,575 per year, or $381.32 per month. The non custodial parent's pro rata share of the child support obligation on combined income over $130,000 is $19,934 per year, or $458.36 per month. The non custodial parent's total pro rata share of one child support obligation

is $3042 per month. Taking into consideration the factors set forth in the December 21, 2011 Decision as set forth therein, the court it would not be unjust or inappropriate to apply the statutory formula to the entire combined parental income, especially considering the extent the custodial parent expends supporting the child

13

Exhibit A

23MAY11A

1

1   SUPREME COURT OF THE STATE OF NEW YORK
    COUNTY OF WESTCHESTER
2   ----------------------------------------x
3   ARTHUR COLON
                                          Index #
4                        Plaintiff,        18006/08
5       -against-
                                          NONJURY TRIAL
6   RENATA COLON,                           EXCERPT
7
                         Defendant.
8   ----------------------------------------x
                         111 Dr. MLK Jr. Blvd
9                        White Plains, New York 10601
                         May 23, 2011
10  B E F O R E:
                  HONORABLE LINDA CHRISTOPHER,
11                    Supreme Court Justice
12  A P P E A R A N C E S:
13
14        GUTTRIDGE & CAMBARERI, LLP.
          Attorneys for Plaintiff
15        303 South Broadway
          Tarrytown, New York
16        BY:  JOHN GUTTRIDGE, ESQ.
17
18        RENATA COLON
          Pro Se
19
20
21
22        ERICA ANDREWS, R.P.R.
23        Senior Court Reporter
24
25

2

Proceedings

1            {whereupon the following occurred on the

23MAY11A
2    record in open court.}

3                    THE CLERK: Case number one on the calendar,

4    in the matter of Colon versus Colon, 18006 of 2008.

5    Your Honor, this is your continued nonjury trial from

6    last week.

7                    Please state your appearances for the

8    record.

9                    MR. GUTTRIDGE: Sorry, your Honor.  John

10   Guttridge.

11                   MS. COLON: Renata Colon, pro se.

12                   THE COURT:  All right, we left on Friday

13   and I gave you an opportunity to meet to see if you

14   wanted to try to resolve the case.  I'm not hearing

15   that it's settled, so we're going to proceed.

16                   MR. GUTTRIDGE: We did, Judge.

17                   Just so you know, I spoke with consulted

18   counsel a few times over the weekend.  We sent some

19   e-mails back and forth.  We might have a resolution to

20   a few issues.  I just wanted to make sure that, that

21   is, in fact, the case.

22                   THE COURT:  Okay.  What do you think we've

23   resolved?

24                   MS. COLON: Your Honor, I think that we can

25   resolve a few issues related to the fact that prior to

                                                          3
                             Proceedings

1    coming to trial we had resolved some issues, Mr. Colon

2    and myself, as well.  One of them being the cars.  I

3    know at length we've spent a lot of time and I don't

4    want to waste the Court's time any longer on that.

5                    We had an agreement and the agreement also

                             Page 2

23MAY11A

6   involved the trading of title of the Audi and a cash

7   payout to him.  Essentially the car was agreed upon.

8   It was settled.  There was no money or funds to be

9   disbursed to either one.  We had agreed on all three

10  cars.

11              THE COURT:  So you're keeping your car and

12  he's keeping his car.

13              MR. GUTTRIDGE:  Actually, Judge, I think so.

14  If I can just finalize this.

15              The timeshare deal, they're going to stick

16  to the deal that they signed, which is that she's

17  going to get the two time shares except for the Mayan.

18  She's going to be responsible -- I'm sorry, the

19  Defendant will be responsible for selling the Mayan.

20  They're going to split the proceeds.

21              MS. COLON:  I want to be able to object,

22  your Honor.

23              MR. GUTTRIDGE:  But you can't cherry-pick.

24              MS. COLON:  I'm not cherry-picking.

25              THE COURT:  You know, look, folks, we are

                                                        4

                          Proceedings


1   not doing this, this morning.  Either you have an

2   agreement or you don't.

3              Do you have an agreement?

4              MR. GUTTRIDGE:  My understanding is they're

5   in agreement.  They're going to stick by the deal that

6   they signed in March, which is --

7              THE COURT:  Wait, wait.  Is that correct,

8   Ms. Colon?

9              MS. COLON:  Your Honor, there is an

                          Page 3

23MAY11A

10    agreement from after this weekend when you asked us to

11    go, there is an agreement based upon agreements that

12    we have had prior, on the cars.

13            As far as the agreement with the timeshare,

14    we have that too, as well. And I'm willing to do

15    that, but there is a complication with the selling of

16    the Mayan, that's all. There is one outstanding issue

17    with the Mayan and the back payment on maintenance.

18    The Mayan, I have been trying and that was in our

19    agreement, to sell. We have not been able to solve

20    any issues. I do not want it to extend forever. I

21    would like an end point on that attempt. I have been

22    trying to sell it and  --

23            THE COURT: What is the end point? What do

24    you do?

25            MS. COLON: The end point is either we buy

5

Proceedings

1    each other out on it, because I don't want to have any

2    further issues with him coming back to Court related

3    to the Mayan and that is really what it is. To the

4    extent that we want to follow through with the

5    agreement and complete it, due diligence was done. I

6    worked with the company to be able to sell it.

7    They've asked and I can give you the information, your

8    Honor, for what I asked them to do.

9            THE COURT: I just want to know if you're

10    in agreement with the deal?

11            MR. GUTTRIDGE: Tell you what, Judge. I

12    have bid against myself on the Mayan a couple of

13    times.

23MAY11A

14  what would Ms. Colon be willing to pay for

15  the Mayan timeshare?  Remember something, the sign of

16  a fair deal is if you are willing to pay it or receive

17  it and we're good.  So I would like to know what she's

18  willing to pay?  what she thinks.

19       THE COURT:  That sound like a good idea,

20  either.  Let's get a deal so that either one of them

21  can buy it out.

22       MR. GUTTRIDGE: what would you like for the

23  timeshare, Ms. Colon, for the Mayan?

24       MS. COLON: Okay --

25       THE COURT:  Ma'am, I'm telling you, ma'am

6

Proceedings

1  speak to the Court.

2       MS. COLON: I'm going to suggest, your

3  Honor, the purchase for the Mayan was about

4  $30,000.00.

5       THE COURT:  I remember that.  Believe it or

6  not I remember all of the details of your lives.

7       MR. GUTTRIDGE:  Unfortunately for me, I

8  didn't include you in that, but for me I also remember

9  all of their details.

10       THE COURT:  Yes, as do I remember all of

11  your details.

12       MS. COLON: The Statement of Net Worth says

13  35.

14       THE COURT:  But you said 30 and I remember

15  that.

16       MS. COLON: So I have the sheet to show it

17  and so I was --

Page 5

23MAY11A

18            THE COURT: I don't care. Here is the

19 thing you need to understand.

20            MS. COLON: Okay.

21            THE COURT: I remember the details, but

22 frankly I don't care how you get to where you get to.

23 It doesn't matter to me.

24            MS. COLON: Okay.

25            THE COURT: Because you're talking about a

                                                        7

                     Proceedings

1 settlement.

2            MS. COLON: Yes.

3            THE COURT: If you're talking about your

4 case, then I do care. Because I want to listen to it

5 and I'm going to decide it, but if you want to settle

6 the case I don't care how you get there. It is really

7 of no interest to me.

8            UNIDENTIFIED SPEAKER: Your Honor --

9            MR. GUTTRIDGE: No, no, you're not going to

10 talk in the courtroom, please.

11            The question is how much is she willing to

12 pay for the Mayan?

13            THE COURT: Do you want to answer that or

14 not? We're going to get moving. I'm not going to

15 waste anymore time on this.

16            MS. COLON: I would recommend based on the

17 fact that it's so difficult to sell, that we pay

18 either, anywhere between 10 to $7,000.00 for it.

19            MR. GUTTRIDGE: So you are --

20            THE COURT: Sir?

21            MR. GUTTRIDGE: She's willing to pay 10 or

23MAY11A

22   7, between 7 and 10.

23               THE COURT:  She's willing to pay 7 or 10 or

24   your client can have it for 7 or 10.

25               MR. GUTTRIDGE: Judge, Ms. Colon can have it

8

Proceedings

1   for $8,500.00, since we'll take the average.

2               THE COURT:  Do you want to pay it, ma'am?

3               MS. COLON: I'm sorry, your Honor, excuse

4   me?

5               THE COURT:  Do you want to accept $8,500?

6   I'm sorry, do you want to pay $8,500.00 for it, for

7   the Mayan timeshare?

8               MS. COLON: Yes, Your Honor.

9               MR. GUTTRIDGE: Great.  And then the

10   remainder of the settlement is they'll each keep their

11   own cars.

12               THE COURT:  So let me understand, because

13   with the ED issue, it can get confusing about off the

14   top. The Appellate Division gets a little confused.

15               MR. GUTTRIDGE: They don't understand off

16   the top.

17               THE COURT:  Apparently not.  I don't know.

18               There was a case in which I ordered it off

19   the top and they said no, no, it's 50 percent from

20   this one.  In any event, maybe they don't like the

21   term.

22               Ma'am, I want to be clear about this.  So

23   it's $8,500.00 that's going to come out of your column

24   and will go to the husband's column; is that correct,

25   ma'am?

23MAY11A

9

Proceedings

1          MS. COLON: Yes, Your Honor.

2          THE COURT:  Okay.  So then my understanding

3  of the agreement is the husband is keeping his cars.

4  The wife is keeping her car and the wife is keeping

5  the Mayan timeshare and two other timeshares.

6          MR. GUTTRIDGE: And my client is keeping the

7  house contents, so we're never going to have to get

8  into that, which is a blessing.

9          THE COURT:  So the husband is keeping the

10  house contents.  Not that I love that he's doing that.

11  I love it that I don't have to get involved in that.

12  The husband is keeping the house contents.

13          MR. GUTTRIDGE: And I think that is

14  everything, Judge, which deals with a lot of stuff

15  that we would have spent a lot of time either the

16  Court or you appointing a receiver to do all of this

17  craziness.

18          MS. COLON: Your Honor, may I ask my friend

19  something, a question?

20          THE COURT:  Yes.

21          MS. COLON: Thank you.

22          {A brief pause.}

23          THE COURT:  With the issue of the house,

24  that was agreed to on Friday; am I correct, ma'am?

25          MS. COLON: I'm sorry.  Excuse me your

10

Proceedings

1      Honor?

2              THE COURT:  We dealt with the issue of the
                            Page 8

23MAY11A

3     house on Friday.  Did we finish that issue?  I think

4     you wanted to think about it.

5                     MS. COLON:  I don't know.

6                     MR. GUTTRIDGE:  I thought you ordered the

7     Defendant, Judge --

8                     MS. COLON: Can I answer?

9                     THE COURT:  Go ahead.

10                    MS. COLON: Regarding the stipulation for

11    the house, when I had looked at the Statement of Net

12    Worth there was some concerns for me regarding the

13    value of the house that they submitted and what we had

14    talked about in Court.

15                    THE COURT:  My recollection was that he was

16    going to give you $40,000.00 for your share, your

17    interest in the house.

18                    MR. GUTTRIDGE: No.  I think what it was

19    Judge, if they couldn't agree on the number, they were

20    going to use Lane Appraisals and he would have to buy

21    her out by the end of the year and he was going to

22    stay there until the youngest child graduated from

23    high school, if he couldn't buy her out.  That was my

24    recollection but you recommended to them that they

25    should just use the $700,000.00 number.

                                                        11
                              Proceedings

1                     I have no problem with going to Lane, if

2     they can't agree on the number.  That's fine.

3                     THE COURT:  What is the answer?

4                     MS. COLON: So your Honor in the Statement

5     of Net Worth that was --

6                     THE COURT:  Once again, don't explain it to
                              Page 9

23MAY11A

7      me, ma'am.  I don't want to know the explanation.

8                      I just want to know are you in agreement or

9      not?

10                      MS. COLON: Okay.  I'm in agreement for him

11     to buy me out by August of this year, if possible, if

12     possible.

13                      THE COURT:  I think December was probably a

14     more reasonable time, given the fact that you have two

15     kids in college.

16                      MR. GUTTRIDGE: Two in college already.

17                      THE COURT:  And one on the way.

18                      MS. COLON: Okay.  The concern that I have,

19     your Honor, is -- the concern is regarding payment to

20     the mortgage and payments towards the HELOC, which

21     will effect the equitable distribution of the

22     household, of what the house is worth, the value of

23     the house.  I agree with doing an appraisal.

24                      THE COURT:  It won't effect the value.

25                      MS. COLON: It will effect what I will net

                                                                    12

                              Proceedings

1      from the proceeds.

2                      THE COURT:  It will effect what you net?

3                      MS. COLON: We -- I'm sorry, the proceeds

4      that I would receive.  And my concern is, your Honor,

5      that in Court --

6                      THE COURT:  Wait a minute.  We haven't

7      gotten to that point yet.  We're still,

8      unfortunately -- You know, your job for this weekend

9      was to go figure out the HELOC.  You guys didn't do

10     that, so unfortunately the HELOC is still an issue.

23MAY11A

11    So the issue in terms of the HELOC is still at issue.

12            So the question is whether you're in

13    agreement that the husband can buy out your interest,

14    whatever that is determined to be and if you folks

15    can't agree on the value, then you'll have Lane

16    Appraisals do it.

17            He'll do it on or before December 31st.

18    Part of that is that he's got to get your name off the

19    HELOC on the mortgage.  And then you'll determine, you

20    both will determine what your interest is after the

21    Court has determined, because you can't-- the parties

22    share of what is owed with regard to the HELOC and

23    perhaps with regard to the mortgage, I'll make that

24    determination once I hear all of the evidence.  That

25    was the stipulation proposal.

13

Proceedings

1            MS. COLON: And your Honor, if I may, there

2    was no decision for the Plaintiff to purchase the

3    house by the end of December.

4            THE COURT:  Then the house gets put on the

5    market when the youngest turns 18.

6            MS. COLON: Can I have the option to

7    purchase it at that point?

8            THE COURT:  I don't see why not.  If the

9    Plaintiff doesn't purchase it, then I don't see why

10    the Defendant wouldn't have that option.  He would

11    have the first option.

12            MS. COLON: Thank you.

13            And so then I would be able to, as well,

14    have the period of time to be able to pay as well the

23MAY11A

15  year, since we both share in the expenses for the

16  kids.

17          THE COURT:  Okay.  So you would want until

18  when?  He has until December 31st to exercise his

19  option.  How long would you want to exercise yours?

20          MS. COLON:  I would want at least eight

21  month, like he would have.

22          THE COURT:  Okay.  So she would have until

23  August to exercise her options.

24          MR. GUTTRIDGE:  Right.  I think the youngest

25  one turns 18 in July.

                                                    14

Proceedings

1          MR. COLON:  June of 2012.

2          MR. GUTTRIDGE:  That means he can stay until

3  August.

4          MS. COLON: Absolutely.  Absolutely.

5          MR. GUTTRIDGE:  Judge, just to be clear.

6  You have no problem with that, correct?

7          So we have a settlement on multiple issues.

8  I don't want to recite it, because I don't want to be

9  unfair.

10          THE COURT:  I understand that we have a

11  settlement on the house contents, on the timeshares

12  and the cars.  This is on the record this morning.

13          We also have another settlement that the

14  Plaintiff will be entitled to remain in the marital

15  residence until the youngest child turns 18, at which

16  time the house will be placed on the market.  However,

17  prior to that time the Plaintiff has the option to

18  purchase the defendant's share or interest in the

Page 12

23MAY11A

19   house out by doing the following.

20           Number one, taking her name off of the

21   mortgage, taking her name off of the HELOC.  That is

22   removing her responsibility and her name on those

23   loans and pay her, her interest in the marital

24   residence.  The interest in the marital residence will

25   be determined by either the agreement of the parties

15

Proceedings

1   or if they are unable to agree, then Lane Appraisals

2   will prepare an appraisal.  The cost of that appraisal

3   will be shared by the parties.

4           If the Plaintiff determines that he does

5   not wish to exercise his option to purchase the

6   defendant's interest in the marital residence, the

7   defendant may decide to purchase the Plaintiff's

8   interest in the marital residence.  She will then

9   advise him on or before -- yes, on or before the

10   youngest child's 18th birthday that she wishes to

11   exercise her option to do so and the youngest child

12   turns 18 when?

13           MR. GUTTRIDGE: June.

14           THE COURT:  June what?

15           MR. COLON:  3rd.

16           THE COURT:  June 3rd.

17           The Defendant will have until August 31st

18   to purchase the Plaintiff's interest in the residence

19   and that will require that she also at that time have

20   the Plaintiff's name removed from the mortgage and the

21   HELOC, so that he has no responsibility for those

22   loans and also to pay him his interest in the

Page 13

23MAY11A

23    residence.  The parties will use Lane Appraisal.

24              MR. GUTTRIDGE: No problem, Judge.

25              THE COURT:  That is why both parties are

16

Proceedings

1    paying for it, because they'll each be entitled to use

2    it based on their determination as to whether they

3    want to buy the other out.

4              Is that your understanding, ma'am, of the

5    agreement?

6              MS. COLON: Yes.

7              THE COURT:  Sir, is that your understanding

8    of the agreement?

9              MR. COLON: Yes.

10             MS. COLON: Your Honor, can I have my friend

11   sit next to me.  If I want to ask any questions.

12             THE COURT:  No.  Your friend who's a

13   lawyer -- you know, I have really tried to extend a

14   courtesy but until he's ready to put his notice of

15   appearance on the record, he may not sit at counsel

16   table.  Okay.

17             Now that leaves us with the following

18   issues as I understand it.  The ED regarding the

19   monies from your client's prospective, it's the monies

20   that you believe the Defendant removed from various

21   accounts and HELOC, correct?

22             MR. GUTTRIDGE: Yes, Your Honor.

23             THE COURT:  And those monies were 120, 93,

24   and another 21; is that right?

25             MR. GUTTRIDGE: Yes, Your Honor, the back

17

Page 14

23MAY11A
Proceedings

1    medical, the back child support.

2              THE COURT:  No, no, we're not doing that.

3    We're just doing ED.

4              MR. GUTTRIDGE: I'm sorry, I apologize your

5    Honor.

6              THE COURT:  Is that it in terms of ED?

7    That is from my memory.

8              MR. GUTTRIDGE: The Judge is saying the

9    HELOC.

10             THE COURT:  The HELOC, it was 120, 93 and

11   21, is my recollection of the numbers.

12             MR. GUTTRIDGE: There are other withdrawals.

13   I know you said you're not going backward, so we

14   didn't get into those.

15             THE COURT:  In 2007.

16             MR. GUTTRIDGE: No, no, Judge.  I'm happy

17   not to get into them.

18             THE COURT:  No, no, I know.

19             MR. GUTTRIDGE: I want to make sure the

20   Court is not going to go back, because that is what

21   you're going to hear from the Defendant.

22             THE COURT:  We may end up having to do

23   that.

24             MR. GUTTRIDGE: Okay.  So the Court is

25   aware, I was remiss on Thursday because the HELOC went

                                              18
Proceedings

1    up and I said to my client what did you do?  You

2    didn't pay or you withdrew, you must have done

Page 15

23MAY11A

3    something.  There is a $4,600 and we actually have a

4    copy of it, it's remarkable.  My client --

5              MS. COLON: Your Honor, I object.  I haven't

6    been able to talk or speak about it.

7              THE COURT:  You're going to be able to.

8    You're the Defendant.  That is the position you're in.

9    You'll able to talk.  It's not like anybody is picking

10   on you or discriminating against you.  That is just

11   where you fall in the realm of how we do things here.

12             The Plaintiff and then the Defendant.

13             Go ahead, sir.

14             MR. GUTTRIDGE: There is a $4,600.00 check

15   that is withdrawn from the HELOC in January of this

16   year by Mrs. Colon.  And you know, my client was upset

17   with me when I said why are you doing this, you know,

18   you're not supposed to touch it.  That's the whole

19   deal.  So I sent him to the bank and I have the

20   checks.  I shouldn't say I sent him, he went to the

21   bank.

22             THE COURT:  You'll have to put it in.

23             MR. GUTTRIDGE: You know what, Judge, the

24   HELOC is the HELOC.  It started at 474.  If it ends at

25   474, nobody should have had to pay it down.  We can

                                                        19
                        Proceedings

1    move that issue.

2              THE COURT:  Well, that is what I'm working

3    on here.

4              MR. GUTTRIDGE: Other than the big

5    withdrawals that never made it back into the HELOC.

6              THE COURT:  Okay.  Now from your

23MAY11A

7  prospective, ma'am, in terms of -- sorry -- then you

8  have the support, the child support issues and back.

9  You have child support arrears which I think we

10  resolved.

11  MR. GUTTRIDGE: We did, Judge.  It's

12  $6,900.00 less the laundry.

13  THE COURT:  Have you figured that one out?

14  MR. GUTTRIDGE: It was about 600.00.  It

15  ended up being $6,300.

16  THE COURT:  You think it's a different

17  number.  I asked you guys to go over that.  We will

18  figure that piece out.  The basic arrears, what is the

19  basic arrears and then we have the health arrears.

20  MR. GUTTRIDGE: We established those numbers

21  the other day, your Honor.

22  THE COURT:  But the Defendant hasn't agreed

23  to those.

24  MR. GUTTRIDGE: No, no.  She would like --

25  THE COURT:  I'm just trying to figure out

20

Proceedings

1  the issues, that's all.

2  MR. GUTTRIDGE: I know.  I just want to --

3  that's fine, your Honor.

4  THE COURT:  Okay.  So Ms. Colon with regard

5  to the ED, we haven't heard your case yet, so I'm not

6  entirely sure what it is you're claiming that is due

7  you or that is due back to the Plaintiff, however you

8  look at it in terms of ED.

9  MS. COLON: ED is education?

10  THE COURT:  ED is equitable distribution.

Page 17

23MAY11A

11    That is the money piece.

12          MS. COLON: Your Honor, I prepared for you

13    and I have a copy for Mr. Guttridge all of the issues

14    with the monies.

15          THE COURT:  I'm just asking you to tell me.

16          MS. COLON: So the issues for me are for as

17    far as the health insurance.

18          THE COURT: No, ma'am, listen to me.  I get

19    to control how I want the questions and answers done

20    in the courtroom.

21          MS. COLON: Uh-huh.  Yes, Your Honor.

22          THE COURT:  So that may be difficult for

23    you to follow but that is the way I have to do it.  As

24    I explained to you before, I go from one case to the

25    next and if I don't do it this way, I won't be able to

21

Proceedings

1    get through my cases.

2          MS. COLON: Okay.

3          THE COURT:  The question is with regard to

4    the money piece.  Not the child support, not the

5    arrears, not the add-ons, just the money.  What do you

6    think is due to you or due to him, whichever way you

7    want to look at it?

8          MS. COLON: Okay.  As far as -- Okay, as far

9    as the stocks, 96,050 from the 850 stock options, plus

10    the 7,629 which would be half of that.

11          THE COURT:  So half of the $96,050.00 and

12    half of the $7,629.00.

13          MS. COLON: And half of the -- oh, yeah,

14    half of the $16,259 that he transferred and forged my

23MAY11A

15   signature and half of the CD that he has with his mom,

16   which is $7,500.  And as far as the HELOC --

17               THE COURT:   I'm sorry, the $7,629?

18               MS. COLON: I'm sorry.

19               THE COURT:  what was the $7,629?

20               MS. COLON: $7,629.00, that was from

21   American Century Investment Stocks that he sold into a

22   separate account.  He has three Ameritrade accounts

23   that are in his own name.

24               THE COURT:  Okay.

25               MS. COLON: And then there were also stamps,

22

Proceedings

1   coins and silver that he put in the Statement of Net

2   Worth.  So that was like 900.  So half of that would

3   be $450 and then there is rent, back payment of rent.

4   He's collecting rent and that would be, when you

5   divide it --

6               THE COURT:  He's collecting rent?

7               MS. COLON: Yes, he's collecting rent.

8               THE COURT:  From who?

9               MS. COLON: We have a person living with us.

10   His name is Joe and I have the documents to show you

11   that he's contributing to the household expenses.  And

12   he's contributing to the household expenses,

13   $1,030.00.  I subtracted the period of time that I was

14   in the house for five months.  There was a total of 28

15   months in rent, which nets then to 23 months.  It

16   comes out to $23,690.00 and half of that would be

17   $11,845.00.

18               The 529 accounts we were stipulated by the

Page 19

19    Court not to use up my 529's, which was that 120, 60 K

20    put into each account for each child.  We were

21    stipulated by the Court that unless that is exhausted,

22    we were not to use the 529's from Mr. Colon because of

23    the issue of wastage and the concern of transferring

24    of funds.

25           THE COURT:  So wait --

                                         23

                 Proceedings

1        MS. COLON:  He had in his 529's, $32,144.01.

2    So he was allowed to use $3,500 for a computer but was

3    not to touch anything else.  So that totals $28,644.00

4    that he used of college monies.

5        MR. GUTTRIDGE:  If I could get the date of

6    that court order.

7        MS. COLON:  It was stipulated in there.

8    I'll show it.  I'll get there.  Okay.

9        The HELOC, we were also told to not to use

10    the money and there were $14,440.00 in withdrawals

11    from Mr. Colon just starting only from the date of

12    filing, which is 8/15.  Not even going back.  Prior to

13    going to the closing of the HELOC because we had two,

14    your Honor.  We had one that was with Bank of America

15    and then one with TD Bank.

16        Prior to going to the closing, Mr. Colon

17    stated at the closing when I saw that it was $21,000

18    above what it was two weeks ago, he stated that he

19    used the $21,000 to pay for credit cards.  So my

20    concern, your Honor, was that he was taking money out

21    and I was concerned that he was exhausting -- and

22    there were so many things going on in the household I